CaRUTHEES, J.,
delivered the opinion of the Court.
On 7th November, 1846, Miller and wife contracted in writing to sell “4447 acres of land at 20 cents per acre, lying in Bledsoe county, State of Tennessee.” The boundaries are given, and the terms of payment set forth, ,$600 down, to be paid in sheep, and the balance on time. On the 1st day of May, 1847, a deed was made with covenants of seizin and warranty. The deed recites, that “for the consideration of $889 40 to them in hand paid,” they have sold and do convey to the said Benjamin Bentley and his heirs, “the following described tract of land,” and then gives a description by metes and bounds, and concludes, “containing four thousand for hundred and forty-seven acres.”
In addition to the sheep at $600, the defendant paid $100, leaving $189 unpaid.
Miller and wife filed the original bill for the balance due, and claiming that at the time of the contract of sale, out of the quantity sold, 250 acres were excepted, as having been sold to one Thompson, and that the complainant was requested to procure it from Thompson at such price as could be agreed upon, and that was to be paid by defendant, and that he did procure it at *673 75 cents per acre, and included it in the deed by ■which the consideration -would be to .that extent augmented. All this is denied in the answer, and an angry controversy arises upon it. It seems that the complainant had interlined that fact in the copy of the written contract held by him, but he .contends that it was by authority of Bentley, and who agreed to do the same in his copy. This is jpbsitively denied. Upon this question of fact much proof is taken, as a charge of perjury is made by each party against the other, and that of forgery in addition, against complainant. This is put out of' the case by the decree of the Chancellor, who found that the allegation of the complainants on that point, was not sustained by the evidence, and as we think, correctly.
But Bentley, by his cross-bill, raises some questions which are properly before us. ' He insists, that upon an accurate survey of the land according to the boundaries given, it falls short of the quantity sold, by about 1500 acres, and that within the boundaries there are older and better claims to '■ the extent of about ■- acres. Eor all this he claims to be allowed, by a deduction from the sum agreed to be given, to be applied to the extinguishment of the balance of $189, and the remainder to be refunded to him.'
Upon these matters, there „was a reference to the master, and a report made, by- which, as finally adopted and decreed by the Court, it. appears that the deficiency in quantity is 1524J acres, and the quantity taken by interference of older and better claims, is 188 acres. The first is valued at the contract price of 20 cents per acre, and the last ’ at what it was sup *674 posed to be "worth, to-wit: 15 acres at $4, and 173 acres at $1 00 per acre. The whole loss is $537 96. That amount less the balance due on the purchase, viz., $189 40, is decreed to Bentley under his cross-bill, and the defendants bring the case here by appeal from the action of the Court, upon his exceptions to the report, raising several questions.
The first question that arises is, can the abatement be made for the deficiency in quantity ? The deficiency here is about one-third. There is no express stipulation that ,it shall contain a certain quantity, but the metes and bounds are given, and the quantity is stated to be 4447 acres.
The contract reduced to writing, November, 1846, is for 4447 acres, at 20 cents per acre. The deed made the next May is in general terms, stating the consideration to be $889 40, and the quantity of land to be as stated in the contract.
It is correctly argued, that when ■ a sale is in gross, and not by the acre, and there is no fraud, the purchaser takes at his own risk, as to the quantity, unless the deficiency be very great, so much so, as to create a presumption of fraud. But here the sale was not in gross, but by the acre. The. contract of sale was in November, 1846, and not when the deed was made, in May, 1847, that was only the execution of the contract. So the cases cited of Allison vs. Allison, 1 Yerg.; and Meek vs. Bearden, 5 Yerger, do not apply to this case, so as to sustain the argument. They relate to sales in gross, and not by the acre. The first case was at law, but the last in equity, but the principle settled, seems to be the same; that is, where *675 the boundaries are given correctly, in the contract of sale, and there is no stipulation as to quantity, nor any fraud, it is a sale in gross, and no deduction in the price can be made for deficiency in quantity.
2. Can the complainant in the cross-bill be allowed the value of the older and better claims, within the boundaries sold to him? We think that question was properly decided by the Chancellor. It is true, that a claim for failure of title upon a warranty, cannot be set up either in law or equity, until after eviction. But in this case there are covenants of seizin, &c. Besides, it is not required to wait for eviction, in cases where the title and possession is in another at the time of the sale. That would be an absurdity, as there could be no technical eviction in such a case. As the complainant files his bill for the balance of the consideration, he must settle up the whole matter, and is subject to a decree against himself, if the balance is so found.
We think the decree is right on both points, and it will be affirmed.